UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **KEVIN GREENBERG**, ) | |
| ) | **Case No.: 1:16-cv-196** |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **FORTUNE CIRCLE, LLC d/b/a RAMADA** ) | |
| **INDIANAPOLIS AIRPORT**, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND ATTORNEY'S FEES

**COMES NOW**, Plaintiff Kevin Greenberg, by counsel, complaining of Defendant Fortune Circle, LLC d/b/a Ramada Indianapolis Airport, and states to this Court as follows:

### PARTIES AND RECITALS

1. Plaintiff Kevin Greenberg ("Greenberg") is an individual who resides and lives in Wildwood, Florida.

2. Greenberg is a combat veteran who served 3 tours of duty in Iraq and Afghanistan.

3. Defendant Fortune Circle, LLC d/b/a Ramada Indianapolis Airport ("Ramada Indy Airport") is a private corporation with its state of incorporation in Illinois and with an entity mailing address of 6625 N. Kostner Ave., Lincolnwood, IL 60712 and a registered agent address c/o Syed Hussain, 5601 Fortune Cir. W., Indianapolis, IN 46241.

4. Ramada Indy Airport is a hotel in Indianapolis, IN at the physical address 5601 Fortune Cir. W., Indianapolis, IN 46241.

5. Ramada Indy Airport rents rooms at certain rates for travelers.

6. Ramada Indy Airport maintains it is a "pet-friendly hotel" and that "ADA defined service animals are welcome".[1]

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this litigation implicates the proper interpretation and application of the federal Americans with Disabilities Act ("ADA") which prohibit discriminations on the basis of disability by public accommodations.

8. Venue is proper under 28 U.S.C. § 1391 in that Ramada Indy Airport is an entity which resides within the Indianapolis Division of the Southern District of Indiana as it is subject to personal jurisdiction of this Court in the Indianapolis Division of the Southern District of Indiana.

## FACTUAL ALLEGATIONS

9. At all times relevant, Greenberg was an individual with a "disability" as defined in 42 U.S.C. § 12102.

10. At all times relevant, Greenberg was substantially limited in the major life activity of brain function.

11. Greenberg was diagnosed with post-traumatic stress disorder ("PTSD") and corresponding severe depression.

12. At all times relevant, Greenberg had PTSD.

13. At all times relevant, Greenberg uses the services of a dog named Shadow for his PTSD and PTSD-related symptoms.

---

[1] "Ramada Indianapolis Airport", *Ramada Worldwide*, available at http://bit.ly/1nCeDd9 (last accessed on January 22, 2016).

14. Shadow is a service animal as defined 28 C.F.R. § 36.104 as he was specifically trained to do work or perform tasks for Greenberg and said work or tasks are directly related to Greenberg's disability.

15. At all times relevant, the Ramada Indy Airport at 5601 Fortune Cir. W., Indianapolis, IN 46241 was a place public accommodation and offered a good and service (i.e. hotel rooms and related service, including a continental breakfast service) that was a public accommodation.

16. On December 19, 2015, Greenberg left by vehicle from his residence in Wildwood, Florida for Lombard, Illinois, a Chicago suburb, to celebrate Christmas at his sister's house.

17. Greenberg was traveling with his girlfriend and Shadow.

18. Greenberg is originally from the Greater Chicago area, and more specifically Northwest Indiana, where many of his family still reside.

19. Greenberg regularly travels through Indianapolis to visit his family in the Greater Chicago area.

20. Earlier in the day on December 19, 2015, Greenberg called Ramada Indy Airport to make reservations for him and his girlfriend to stay one night.

21. Greenberg intended to stay one night at Ramada Indy Airport before completing his trip to Lombard, Illinois.

22. Ramada Indy Airport took Greenberg's girlfriend's credit card for the reservation.

23. Greenberg informed Ramada Indy Airport that a service animal (i.e. Shadow) would be accompanying him.

24. On or about 8 p.m. on December 19, 2015, Greenberg arrived and checked into Ramada Indy Airport.

25. Shortly thereafter, Greenberg brought Shadow downstairs to the Ramada Indy Airport lobby to purchase certain personal hygiene items.

26. At that time, Greenberg also took Shadow out to relieve himself prior to going to sleep.

27. At that same time, in the lobby of the Ramada Indy Airport, an event was being held.

28. Greenberg believes the event was a birthday party.

29. Upon reentering the lobby, after Shadow relieved himself outside, an employee of Ramada Indy Airport called out across the lobby that he needed to see proof that Shadow was a service animal and requested documentation that Shadow was a service animal.

30. At that time, Greenberg's girlfriend had came down to the lobby area.

31. Greenberg asked his girlfriend to go to the hotel room and retrieve information related to Shadow and his service as a service animal.

32. While his girlfriend went back to their hotel room, Greenberg sat down along with Shadow in the lobby to wait for his girlfriend to return.

33. During this time, the Ramada Indy Airport employee continued to talk with Greenberg while checking in other hotel patrons that he needed to see the information that Shadow was a service animal.

34. Shortly thereafter, Greenberg's girlfriend returned with Shadow's information.

35. Greenberg took the information from his girlfriend and got in line or the queue behind other hotel patrons at the front desk in the lobby.

36. During this time, the Ramada Indy Airport employee still continued to talk with Greenberg while checking in other hotel patrons that he needed to see the information that Shadow was a service animal.

37. When it was his turn at the front desk, Greenberg placed information related to Shadow, including his own personal health information, on the counter.

38. Greenberg told the Ramada Indy Airport employee that he was willing to show him the documents, but notified the employee that it was a violation of his rights.

39. Greenberg encouraged him to look at the laws regarding service animals so that in the future a guest or patron of Ramada Indy Airport would not cause him or Ramada Indy Airport any trouble.

40. The Ramada Indy Airport employee claimed that he had a right to ask for any proper paperwork they want because they were a private company.

41. The Ramada Indy Airport employee indicated that a failure on Greenberg's part to show him documentation related to Shadow as a service animal would result in a pet fee being charged.

42. Greenberg simply told the employee to have a good night and went to his room to sleep.

43. The following morning, December 20, 2015, Greenberg and his girlfriend woke up and went down to the lobby with Shadow to partake in Ramada Indy Airport's continental breakfast.

44. As Greenberg, his girlfriend, and Shadow walked into breakfast or food area, the same Ramada Indy Airport employee called out Greenberg from across the lobby.

45. The Ramada Indy Airport employee told Greenberg that Shadow could not be in the breakfast or food area.

46. Greenberg's girlfriend informed the Ramada Indy Airport employee that Shadow could accompany Greenberg anywhere as he was his service animal.

47. The Ramada Indy Airport employee then again noted that no animals are allowed in the breakfast or food area or any other restaurants.

48. The Ramada Indy Airport stated he was following state laws.

49. Instead of causing a scene, Greenberg just waited in the lobby area, outside the breakfast or food area while Greenberg's girlfriend ate.

50. Greenberg did ask his girlfriend to bring him a coffee while he waited.

51. By this time, Greenberg's anxiety levels began to rise.

52. Greenberg became preoccupied and simply wanted to leave Ramada Indy Airport.

53. At this time, the Ramada Indy Airport stated that if he let Shadow in the breakfast or food area that he would have to let all animals into the area.

54. There were a significant number of patrons present during this time who witnessed Greenberg's treatment by the Ramada Indy Airport employee.

55. The other patrons began to stare at Greenberg.

56. The Ramada Indy Airport employee, while Greenberg was waiting, said he could eat in the lobby area away from the breakfast or food area, but that his girlfriend would have to bring him the food.

57. Shortly thereafter, Greenberg's girlfriend went to retrieve their property from the hotel room.

58. Upon Greenberg's girlfriend returning to the lobby, Greenberg along with Shadow left the Ramada Indy Airport.

59. By this time, Greenberg's anxiety and stress levels were high.

60. Greenberg got into his car.

61. By this time, Greenberg was shaking and having a panic attack.

62. Greenberg's girlfriend immediately contacted the Veteran's Administration crisis hotline via text message.

63. Upon returning to his residence in Wildwood, Florida, Greenberg scheduled an appointment with a mental health care provider to receive services as a direct result of the incident.

## COUNT 1: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

64. Ramada Indy Airport denied Greenberg the full and equal enjoyment of the good, services, facilities, privileges, advantages, or accommodations based on his disability in violation of 41 U.S.C. § 12181 *et seq*.

65. Ramada Indy Airport continues to maintain and enforce a policy which denies similarly situated individuals, like Greenberg, the full and equal enjoyment of the good, services, facilities, privileges, advantages, or accommodations based on his disability in violation of 42 U.S.C. § 12181 *et seq*.

## PRAYER FOR RELIEF

66. Greenberg prays that a judgment be entered on his behalf and against Ramada Indy Airport on all counts of this complaint that:

   A. declares that Ramada Indy Airport conduct as alleged herein violates the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* to the fullest extent of that law;

   B. awards Greenberg reasonable attorney's fees and litigation costs and expenses incurred in this matter to the fullest extent of law;

C. requires Ramada Indy Airport to become compliant with the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*; and,

D. awards any and all other relief as this Court deems just and proper.

Dated: January 25, 2016            Respectfully submitted,

*s/ Alex Beeman*
Andrea L. Ciobanu, #28942-49
Alex Beeman, #31222-49
CIOBANU LAW, P.C.
8910 Purdue Road, Suite 240
Indianapolis, IN 46268
Phone: (317) 495-1090
Fax: (866) 841-2071
Email: aciobanu@ciobanulaw.com
Email: abeeman@ciobanulaw.com